**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **COMPLAINT** |
| **SUMMIT HOSPITALITY GROUP, LTD., D/B/A RESIDENCE INN RALEIGH DOWNTOWN,** | ) | **JURY TRIAL DEMAND** |
| **Defendant.** | ) | |

## NATURE OF THE ACTION

This action is filed pursuant to Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Lamar Singleton ("Mr. Singleton") who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission (the "Commission") alleges Defendant Summit Hospitality Group, Ltd., doing business as Residence Inn Raleigh Downtown ("Defendant"), violated the ADA when it failed to provide Mr. Singleton with a reasonable accommodation for a disability, when it discharged him from employment because of a disability, and when it required him to be 100% healed before returning to work. ADA, 42 U.S.C. § 12101, et seq.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina, Western Division.

**PARTIES**

4. The Commission is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5. At all relevant times, Defendant, a North Carolina corporation, has continuously done business in the State of North Carolina, including in Raleigh, North Carolina.

6. At all relevant times, Defendant has continuously had at least fifteen (15) employees.

7. At all relevant times, Defendant has continuously been a covered entity as an employer engaged in an industry affecting commerce under Section 101(2) of the ADA, 42 U.S.C. § 12111(2), and an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

**ADMINISTRATIVE PROCEDURES**

8. More than thirty days prior to the institution of this lawsuit, Mr. Singleton filed a charge with the Commission alleging violations of the ADA by Defendant.

9. On June 3, 2026, the Commission issued to Defendant a Letter of Determination notifying Defendant that the Commission found reasonable cause to believe that Defendant violated the ADA by failing to accommodate Mr. Singleton's disability, by discharging Mr. Singleton from employment because of a disability, and by maintaining a 100% healed policy or practice that discriminated against Mr. Singleton.

10. The Commission invited Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. On June 7, 2026, Defendant, through counsel, advised it was declining conciliation.

13. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14. On June 16, 2026, the Commission issued to Defendant a Notice of Failure of Conciliation.

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

16. As described in greater detail below, beginning as early as June 2024, Defendant engaged in unlawful employment practices with respect to Mr. Singleton, in violation of the ADA, 42 U.S.C. § 12101, et seq.

17. Defendant hired Mr. Singleton as a Houseperson on or about June 5, 2017.

18. Throughout his employment with Defendant, Mr. Singleton worked in a dual capacity as a Houseperson and as a Laundry Attendant.

19. The job description of a Houseperson lists responsibilities such as maintaining the cleanliness of the public areas of the hotel including the lobby, public restrooms, hallways, stairwells, guest laundry, fitness center, business center, outdoor spaces, and offices.

20. The job description of a Laundry Attendant lists responsibilities such as sorting linens and treating stains; loading laundry into washer and adding cleaning agents; sorting and folding or hanging clean dried items; maintaining inventory of cleaning supplies and laundry equipment; and performing additional laundry services or other assigned duties.

21. Mr. Singleton successfully performed his job in a manner that met Defendant's legitimate job performance expectations.

22. Prior to March 22, 2024, Mr. Singleton could perform the essential functions of the Houseperson and Laundry Attendant positions without accommodation.

23. On or about March 22, 2024, Mr. Singleton was injured when the bus he was on was hit by another bus. Mr. Singleton sustained injuries that rendered him a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

24. Mr. Singleton had physical impairments to his musculoskeletal system, including injuries to his shoulder, neck, and legs that substantially limited the major life activities of walking, lifting, pushing, and pulling of more than 20 pounds.

25. Following the accident, Mr. Singleton notified Defendant that he was injured and needed time off for treatment and healing.

26. On or about April 1, 2024, Mr. Singleton submitted a written request to Defendant for leave related to his disability beginning March 28, 2024 through May 2, 2024. Defendant approved Mr. Singleton's request for leave under the Family and Medical Leave Act (FMLA).

27. Around May 14, 2024, Mr. Singleton notified Defendant that his return-to-work date had been extended to July 1, 2024.

28. Defendant approved Mr. Singleton's leave through July 1, 2024.

29. Throughout his leave, Mr. Singleton remained in contact with Defendant concerning his disability, communicating with Defendant's Director of Human Resources and/or his immediate supervisor.

30. On or about June 11, 2024, Mr. Singleton provided Defendant with a medical note advising "we are hopeful for a modified return to work duty status in July."

31. On June 13, 2024, Defendant's Director of Human Resources emailed Mr. Singleton and stated "Please keep in mind that we have your return date as 7/1/24 as we cannot honor anything past this date since it is already 11 days past the FMLA 12-week allotted days and the property in [sic] unable to hold the position any longer."

32. The June 13, 2024 email also stated "If you are unable to return to work by the 7/1/24 date, we can terminate on good terms, and you can use the time to heal. You can reapply at any point when you are feeling better and good to return to work if a position at the same property is available."

33. On or about June 21, 2024, Defendant's Director of Human Resources emailed Mr. Singleton stating that Mr. Singleton needed to provide a medical note that he was "released for Full Duty with the return date of 7/1/24 or [Defendant] will not be able to proceed with a return/active status."

34. In a subsequent email on June 21, 2024, Defendant's Director of Human Resources told Mr. Singleton "[y]ou will need to make an appointment with your doctor in order to get the

appropriate note. If he does not clear you, we will need to release employment, and then you can return back to your original status once your doctor releases you back to Full Duty within 90 days."

35. Mr. Singleton replied via email stating "No light duty?" To which, Defendant's Director of Human Resources responded by email that "it has been informed to me that the property needs to fill your position back with the original requirements at full duty."

36. On June 22, 2024, Defendant hired an individual to fill Mr. Singleton's position.

37. On or about June 25, 2024, Mr. Singleton provided Defendant's Director of Human Resources a medical note releasing him to return to modified work with the following restriction: "No overhead activity/work and no lifting, pushing, pulling more than 20lbs at any time."

38. On or about June 26, 2024, Defendant's Director of Human Resources emailed Mr. Singleton advising that "with the restrictions listed, the property does not have a position available to accommodate them at this time. We will proceed with resignation from the position at this time . . . ."

39. Defendant discharged Mr. Singleton from employment.

40. Defendant failed to engage in an interactive process with Mr. Singleton to identify reasonable accommodations that would have allowed Mr. Singleton to perform the essential functions of the job.

41. Defendant failed to consider reasonable accommodations that would have allowed Mr. Singleton to perform the essential functions of the job and failed to consider modifying or removing marginal job functions.

42. Mr. Singleton could perform the essential functions of his job with or without accommodation.

43. Defendant accommodated employees with similar restrictions as Mr. Singleton, specifically restrictions on lifting, pushing, pulling, and overhead reaching.

44. Upon information and belief, Defendant did not have an ADA policy in place when Mr. Singleton was discharged.

45. Upon information and belief, Defendant did not train its managers or employees on the protections and requirements of the ADA prior to the time Mr. Singleton was fired.

46. Upon information and belief, Defendant presently does not have an ADA policy in place and has not trained its managers or employees on the protections and requirements of the ADA.

**COUNT I:**
***Violation of the ADA***
***Failure to Make Reasonable Accommodation***

47. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 above.

48. In or around June and July of 2024, Defendant engaged in unlawful employment practices at its Raleigh, North Carolina location in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a) and 42 U.S.C. § 12112(b)(5)(A), by failing to provide a reasonable accommodation for Mr. Singleton, a qualified individual with a disability under the ADA, 42 U.S.C. §§ 12102 and 12111(8).

49. Defendant had notice of Mr. Singleton's disability and his request for a reasonable accommodation.

50. On or about June 25, 2024, Mr. Singleton's doctor released him to return to work with restrictions.

51. On or about June 25, 2024, Mr. Singleton provided Defendant with a medical note advising he could return to work with the following limitations: "No overhead activity/work and no lifting, pushing, pulling more than 20lbs at any time."

52. Mr. Singleton's inquiry regarding the availability of light duty and the June 25, 2024 doctor's note releasing Mr. Singleton to work with restrictions gave Defendant notice that Mr. Singleton needed a reasonable accommodation to perform the essential functions of the job.

53. Upon information and belief, reasonable accommodations were available that would have allowed Mr. Singleton to perform the essential functions of the job without causing an undue hardship for Defendant.

54. Defendant failed to engage in an interactive process with Mr. Singleton to discuss his physical limitations, his request for light duty, or potential accommodations.

55. Defendant never had a conversation with Mr. Singleton to determine his ability to perform the essential functions of his position, with or without accommodation.

56. Defendant refused to consider any accommodation for Mr. Singleton.

57. The practices complained of above have deprived Mr. Singleton of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability.

58. The practices complained of above created significant financial hardship and emotional distress for Mr. Singleton, causing pecuniary losses, emotional pain, suffering, inconvenience, and mental anguish.

59. The unlawful employment practices complained of above were intentional.

60. The unlawful employment practices complained of above were committed with malice or reckless indifference to the federally protected rights of Mr. Singleton.

## COUNT II:
***Violation of the ADA***
***Unlawful Discharge Based on Disability***

61. The commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 60 above.

62. In or around July 2024, Defendant engaged in unlawful employment practices at its Raleigh, North Carolina hotel in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a), by discharging Mr. Singleton from employment because of a disability.

63. Mr. Singleton is a qualified individual with a disability under Section 2 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

64. Mr. Singleton could perform the essential functions of the Houseperson and Laundry Attendant positions with or without a reasonable accommodation.

65. After reviewing Mr. Singleton's medical documentation related to his need for accommodation for his physical disability, Defendant repeatedly told Mr. Singleton his employment would be terminated if he could not return to full-duty by July 1, 2024.

66. Defendant discharged Mr. Singleton when he was physically unable to return to full duty, without medical restrictions, by July 1, 2024.

67. Defendant discharged Mr. Singleton's employment because of his disability.

68. The unlawful practices complained of above have deprived Mr. Singleton of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability.

69. The practices complained of above created significant financial hardship and emotional distress for Mr. Singleton, causing pecuniary losses, emotional pain, suffering, inconvenience, and mental anguish.

70. The unlawful employment practices complained of above were intentional.

71. The unlawful employment practices complained of above were committed with malice or reckless indifference to the federally protected rights of Mr. Singleton.

## COUNT III:
***Violation of the ADA***
***100% Healed Practice***

72. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 71 above.

73. The application of a 100%-healed policy or practice, requiring that employees must be fully released or 100% healed before returning to work from medical leave is against public policy and violates the ADA.

74. Defendant applied a 100%-healed policy to Mr. Singleton, thereby depriving him of his right under the ADA to return to work with reasonable accommodation.

75. The unlawful practices complained of above have deprived Mr. Singleton of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability.

76. The practices complained of above created significant financial hardship and emotional distress for Mr. Singleton, causing pecuniary losses, emotional pain, suffering, inconvenience, and mental anguish.

77. The unlawful employment practices complained of above were intentional.

78. The unlawful employment practices complained of above were committed with malice or reckless indifference to the federally protected rights of Mr. Singleton.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants employees, attorneys, and all persons in active concert or participation with it, from discriminating against individuals because of their disabilities, including by failing to provide reasonable accommodation for a disability, terminating employment because of a disability, and maintaining a 100%-healed policy or practice, in violation of the ADA.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Mr. Singleton whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to make Mr. Singleton whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make Mr. Singleton whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Mr. Singleton punitive damages for its willful and/or reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such other relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its cost of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 24th day September, 2026.


**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

CHRISTOPHER LAGE
Deputy General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M. Street, NE
Washington, D.C. 20507

MELINDA C. DUGAS
Regional Attorney
129 W. Trade Street
Charlotte, NC 28202

ZOË G. MAHOOD
Assistant Regional Attorney

By Counsel:

*/s/ Michael J. Pierrie*
MICHAEL J. PIERRIE
Trial Attorney
N.C. Bar No. 44703
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
129 W. Trade Street
Charlotte, NC. 28202
Telephone: (980) 298-3151
Facsimile: (704) 954-6412
Email: michael.pierrie@eeoc.gov